# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## MARCH TERM, 1928

18478. ROYAL INDEMNITY CO. *v.* BATSON-COOK CO.

1. Where, as in this case, a contract to build according to certain specifications provides that "except as otherwise specifically provided in this contract, all claims, doubts and disputes shall be decided by the contracting officer, and the contractor shall promptly proceed with the work under such decision," and that the "decision of the contracting officer shall be final and conclusive," his decision can not be impeached merely because based on the report of another and not on personal inspection. The negligence which would authorize such an attack must be so gross as to justify an inference of bad faith.

(*a*) The assignments of error upon the admission of evidence are without merit; so also is an assignment of error upon that part of the charge of the court which instructs the jury that such finding is conclusive upon the contracting parties.

2. For no reason assigned did the court, after approving the verdict (which is fully authorized by the evidence), err in overruling the motion for a new trial.

### DECIDED MARCH 7, 1928.

Action on bond; from city court of LaGrange—Judge Tuggle. July 26, 1927.

*E. T. Moon,* for plaintiff in error.

*Lovejoy & Mayer, W. Howell Morrow,* contra.

LUKE, J. Batson-Cook Company, on March 11, 1924, entered into a written agreement with Frank T. Hines, director of United States Veterans' Bureau, as contracting officer on behalf of the United States Government, for the construction of certain addi-

---

United States, 39 Cyc. p. 744, n. 21.

tions to United States Veterans' Hospital No. 62, at Augusta, Georgia. Hachmeister-Lind Chemical Company, as subcontractor, on April 22, 1924, entered into a written agreement with Batson-Cook Company, the principal contractor, for the installation of composition floors, according to certain specifications, in five of the additional buildings to be so constructed. Under the terms of this subcontract, all the general provisions and conditions of the principal contract, as well as all drawings and specifications thereof, formed and became a part of the subcontract itself. The principal contract contained the following provisions: "Except as otherwise specifically provided in this contract, all claims, doubts, and disputes shall be decided by the contracting officer, and the contractor shall promptly proceed with the work under such decision;" and "the decision of the contracting officer shall be final and conclusive."

Hachmeister-Lind Chemical Company, about December 1, 1924, completed the work of installing the composition floors, and received from Batson-Cook Company the full consideration therefor; but, because the principal contract provided that "all work under this contract shall be guaranteed for one year from the date of the final settlement under this contract, except when a different period is specifically prescribed," the Batson-Cook Company required the Hachmeister-Lind Chemical Company to furnish a bond with security, the condition of which was as follows: "The condition of this obligation is such that if the said principal shall well and truly, at the request of the said obligee, make any and all repairs to the Halicomp flooring laid in the U. S. Veterans' Hospital No. 62, ordinary wear and tear excepted, caused by defective material or workmanship, for a period of one year from the date of the final acceptance by the U. S. Veterans' Bureau or to the 26th day of January, 1926, and to the satisfaction of the said U. S. Veterans' Bureau, and will fulfill and complete all warranties made by the said principal in its contract and specifications executed and delivered to the said obligee for the said work, then this obligation to be void; otherwise to be and remain in full force and virtue:" and Royal Indemnity Company executed this undertaking as surety for the Hachmeister-Lind Company, the principal therein. Within the period in the guarantee provision, certain defects appeared in the composition floors, and this

fact was first brought to the notice of Batson-CookCompany about December 3, 1925, by means of a letter from M. C. Baines, medical officer in charge of the Veterans' Hospital, who requested Batson-Cook Company to "take immediate steps to correct the defects herein reported;" and Batson-Cook Company in turn so notified Hachmeister-Lind Chemical Company, both by letter and telegram, and transmitted copies to Royal Indemnity Company. Hachmeister-Lind Chemical Company insisted that it was without fault in the premises, and finally, about March 3, 1926, after an inspection and report by one S. B. Walsh, engineer, the following letter was addressed by Frank T. Hines, the contracting officer, to the Batson-Cook Company: "Reference is made to your contract dated March 11, 1924, for certain general construction at U. S. Veterans' Hospital, at Augusta, and particularly to the matter of the recent inspection of the composition floors installed thereunder. As a result of said inspection it is apparent that the failure of these floors was due to the fact that the defective portions thereof had never obtained a bond with the concrete sub-floors. This being the case, demand is hereby made under the provisions of C-25, page 32, of specifications that you take immediate steps to place all composition floors installed by you in satisfactory condition, in strict accordance with the specifications governing same. This will not only require the removal of the entire area of floors in many rooms, but will also require cutting out of loose portions of floors elsewhere. Where the correction will be made by patching, the patch should be either square or rectangular in shape, as regular patching gives a very unsightly appearance. This matter was first brought to your attention under date of December 3, 1925, by letter to you from the medical officer in charge of the hospital at Augusta."

Hachmeister-Lind Chemical Company having failed and refused to replace the defective floors, Batson-Cook Company caused them to be replaced and repaired by Thomas Moulding Brick Company, at a cost of $2920.92, and subsequently brought suit for this sum, together with traveling expenses amounting to $165.29, and engineer's fees amounting to $126.25; and for the aggregate of these sums, with interest thereon amounting to $195.02, obtained a verdict and judgment against Royal Indemnity Company as surety upon the bond of Hachmeister-Lind Chemical Company

hereinbefore referred to. The demurrer to the original petition was overruled in some particulars and sustained in others; and certain paragraphs were accordingly stricken from the petition. The action of the court in overruling the demurrer in part was excepted to, and is assigned as error. This court, however, perceives no error in that respect, and is of the opinion that this assignment of error is not well founded.

In support of the defendant's motion for a new trial (which, of course, was overruled by the court below) there are three assignments of error. The first of these relates to the admission in evidence, over the defendant's objection, of the letter of M. C. Baines, medical officer in charge, to the Batson-Cook Company, under date of December 3, 1925. It appears from the record that the sole purpose of offering this letter in evidence was to prove notice to Batson-Cook Company and to Hachmeister Chemical Company of the condition of the floors. It seems proper that the plaintiff was permitted to show that notice of the defective condition of the floors was brought home to the Batson-Cook Company within the period prescribed by the guaranty, and this without reference to manner or source. Nor is it seen how this in anywise could have prejudiced the defendant.

The second assignment of error challenges the action of the court in admitting in evidence, over the objection of the defendant, the letter of Frank T. Hines, the contracting officer and director general, addressed to Batson-Cook Company, under date of March 8, 1926, hereinbefore referred to, on the ground that the evidence is irrelevant and immaterial, and further that because the contracting officer did not personally inspect the floors, but rendered his decision upon the report made to him by S. B. Walsh, an engineer of the construction division of the Veterans' Bureau, that decision was wholly ineffective and the letter inadmissible. The point is argued by counsel for the defendant with considerable earnestness. But the complete answer to this contention is found in the terms of the contract between the parties concerned. It is provided that the contracting officer in effect is the sole arbiter of all "claims, doubts, and disputes," and that his decision "shall be final and conclusive." It provides no procedure to be employed or followed by him in that connection. It leaves him wholly free to pursue his own method of securing information and

reaching his conclusions. Something more than the mere absence of a personal inspection, in our view, is required to impeach his judgment. There is no claim that he was guilty of any misconduct; and the evidence adduced upon the trial corroborates his finding.

What has been said with reference to this assignment of error disposes of the remaining assignment of error on the charge of the court to the jury.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*